

**COMMONWEALTH OF MASSACHUSETTS**          **SUPERIOR COURT**
**NORFOLK, SC**

DHIMITER S. LLORDI AND NATALIA ) 
HOSHOVSKY, on behalf of themselves and all ) 
others so similarly situated, )          CA NO.    18    0531
)
                    *Plaintiffs,* )          CLASS ACTION COMPLAINT
)
)
vs. )          JURY DEMAND
)
JPMORGAN CHASE BANK, )
NATIONAL ASSOCIATION, )
)
                    *Defendants.* )
)

## INTRODUCTION

1.    Representative Plaintiffs Dhimiter S. Llordi and Natalia Hoshovsky, on behalf of themselves and all other similarly-situated individuals ("Plaintiffs") bring this class action as described in the paragraphs set forth herein.

2.    Plaintiffs seek a declaratory judgment that the Defendants foreclosed mortgages, sold mortgaged properties at Mortgagee's Foreclosure Sales, and conveyed those properties without authorization to accelerate or foreclose Plaintiffs' mortgages as those actions were in breach of Paragraph 9(d) of those mortgages and were not permitted by regulations of Secretary of the Department of Housing and Urban Development, codified under 24 CFR 203.604(b). Therefore, this complaint seeks damages arising from the wrongful actions of the Defendants by conducting

1

non-judicial foreclosures, Mortgagee's Foreclosure Sales, and conveying real property in violation of 24 CFR 203.604(b).

## JURISDICTION AND VENUE

3.      Venue is proper in this Court in that a substantial part of the events or omissions giving rise to this claim have occurred, and the real property that is the subject of the action is situated within the Commonwealth of Massachusetts.

4.      Pursuant to Massachusetts Superior Ct. R. Civ. P. Rule 23(a), this complaint is a putative class action in which the class is so numerous that joinder of all members is impracticable, there are questions of law and fact common to the class, and the claims of the Representative Plaintiffs are typical of the claims of the class.  Further, the Representative Plaintiffs will fairly and adequately protect the interest of the class.

5.      Pursuant to Massachusetts Superior Ct. R. Civ. P. Rule 23(b), the Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

6.      Pursuant to Massachusetts Superior Ct. R. Civ. P. Rule 23(b), the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

7.      Pursuant to Massachusetts Superior Ct. R. Civ. P. Rule 23(b), it is not in the best interest of members of the class to individually control the prosecution or defense of separate actions.

8.      Pursuant to Massachusetts Superior Ct. R. Civ. P. Rule 23(b), the specific extent and nature of any litigation concerning the controversy already commenced by or against members of the class is minimal.

9.      Pursuant to Massachusetts Superior Ct. R. Civ. P. Rule 23(b), it is desirable to concentrate the litigation of the claims in this particular forum.

10.     Pursuant to Massachusetts Superior Ct. R. Civ. P. Rule 23(b), there are little to no difficulties likely to be encountered in the management of a classification.

11.     Plaintiffs and members of the class claim ownership of their rightful property and seek to clear their titles of all illegal encumbrances or in the alternative seek actual, exemplary, punitive, and monetary damages for the Defendants violation of 24 CFR 203.604(b).

12.     Plaintiffs and members of the class claim a judicial determination whether the deed to their properties are affected by any conveyance of another person in each of their chain of title.

## PARTIES

13.     Representative Plaintiffs Dhimiter S. Llordi and Natalia Hoshovsky is a citizen of the Commonwealth of Massachusetts and claims to be one of the rightful owner of the property located at 568-570 Willard Street, Quincy, MA 02169, which is the subject property as noted herein.

14.     Defendant, JPMorgan Chase Bank, N. A. ("Chase") is a mortgage servicing and banking related services company.  Its headquarters are located at 700 Kansas Lane, MC8000, Monroe, LA 71203.

## GENERAL FACTS AND RELEVANT BACKGROUND

15.     The majority of mortgages made in this country are securitized. Simply put, the originating lender grants the initial loan and the borrower gives a promissory note (underlying obligation) and mortgage (security instrument) to that originating lender. The originating lender then typically "pools" that mortgage and note with other mortgages and notes, and sells all of their interest in and title to those notes and mortgages to a trust. The trust then sells "bonds" or

"certificates" representing a percentage of the assets of the trust, mainly the notes and mortgages, and the cash flows associated with the monthly payments made thereon.

16.    Mortgages insured by the Federal Housing Authority (FHA) and their corresponding underlying obligations (notes) are originated by entities, such as Defendant Chase's predecessor in interest, Metlife Bank, N.A., and are then pooled and transferred into mortgage backed trusts. Trusts backed by FHA insured mortgage loans are administered by Government National Mortgage Association (Ginnie Mae). Ginnie Mae is a wholly-owned corporate instrumentality of the United States located within the Department of Housing and Urban Development and was created by the Housing and Urban Development Act of 1968, 825 Stat. 491. Its powers are prescribed generally by Title III of the National Housing Act, as amended, Pub. L. 73-479, codified at 12 U.S.C. 1716 et seq.

17.    The originating entity of FHA mortgages is also referred to as an Issuer. After originating a number of FHA mortgages, the Issuer creates pools of mortgages or loan packages of mortgages with those mortgages it has originated or acquired. It prepares and submits documents for each pooled loan to a document custodian (which may be the same entity as the Issuer), and documents describing the pool or loan package as a whole to a Pool Processing Agent ("PPA").

18.    The Issuer markets securities guaranteed by Ginnie Mae that are collateralized by these pools or loan packages. It administers the securities, providing the funds required for monthly payments to be made to security holders and reporting to Ginnie Mae. The Issuer is responsible for servicing the pooled mortgages until maturity or termination. (See: Exhibit 1; Ginnie Mae MBS Guide, Chapter 1, Sec. 1-10 (B)).

22.    All FHA standard mortgage contracts at paragraph 9(d) state that regulations issued by the Secretary of Housing and Urban Development will limit a Lender's rights, in the case of

4

payment defaults, to require immediate payment in full, and foreclose, if not paid. Paragraph 9(d) further states that the security instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

23.    At issue in this action is a Regulation codified in 24 CFR 203.604(b) which states that a mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.

13.    24 CFR 203.604(c) further states that a face-to-face meeting is not required if: (1) the mortgagor does not reside in the mortgaged property, (2) the mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either, (3) the mortgagor has clearly indicated that he will not cooperate in the interview, (4) a repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or (5) a reasonable effort to arrange a meeting is unsuccessful.

25.    24 CFR 203.604(d) additionally states that a reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.

## ALLEGATIONS OF THE NAMED PLAINTIFFSS

13.    The Representative Plaintiffs' repeat and re-allege every allegation above as if set forth herein in full.

19.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the class described above.

20.     On December 30, 2001, Dhimiter S. Llordi and Natalia Hoshovsky, were granted one of the subject property located at 568-570 Willard Street, Quincy, MA 02169.  The deed evidencing the transfer of the subject property was recorded in the Norfolk County Registry of Deeds in Book 29512 at Page 496, on December 30, 2011.

21.     On December 30, 2011, Dhimiter S. Llordi and Natalia Hoshovsky executed a mortgage and note both in the amount of Four hundred and eighty seven thousand, three hundred and twenty five 00/100 ($487,325.00) Dollars, to Metlife Bank, N.A. as Lender, and Mortgage Electronic Registration Systems, Inc. (MERS) as mortgagee and nominee of Lender, Said mortgage was secured against the 568-570 Willard Street subject property and recorded in the Norfolk County Registry of Deeds in Book 29512 at Page 497 on December 30, 2011. ("The Llordi Mortgage" and "The Llordi Note").

22.     The Llordi Mortgage was designated as an "FHA" mortgage and noted as such on the mortgage itself on page one (1) with the "FHA case number" 251-4792425-729.

23.     Plaintiffs herein allege that all right title and interest in the note secured by the Llordi Mortgage, was pooled, sold, and otherwise transferred to Ginnie Mae, who became the Lender and holder of the note given by Plaintiffs in return for the mortgage loan as noted herein.

24.     On December 22, 2015 MERS assigned the Llordi Mortgage to Defendant Chase. Said assignment was recorded in the Norfolk County Registry of Deeds in Book 33752 at Page 201 on December 29, 2015.

25.     In March of 2018 Defendant Chase through its attorneys notified Plaintiffs that the mortgage "has been accelerated" and that foreclosure would take place in May of 2018.

26.    Further, the foreclosure purportedly conducted by the Defendants is in breach of the mortgage contract at paragraph 9(d) and violation of 24 CFR 203.604(b) which states that prior to acceleration a mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.

27.    Plaintiffs herein allege that Chase, did not have a face to face interview with the borrowers before three full monthly installments due on the mortgage were unpaid, and that the Defendants made no effort to arrange such a meeting.

28.    Plaintiffs further allege that the subject property is within 200 miles of branch offices of the Defendants[1]; and that they occupied and still occupy the mortgaged property; and they never clearly indicated to the Defendants that they would not cooperate with such an interview; and they did not enter into a repayment plan, where payments thereunder were current, consistent with their circumstances to bring their account current, thus making a meeting unnecessary.

## CLASS ALLEGATIONS

29.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

30.    Plaintiffs bring this action as a Class Action pursuant to Mass. R. Civ. P. Rule 23.

31.    The Plaintiffs' sue on behalf of themselves and all homeowners or former homeowners wherein Defendants Chase, Rushmore and/or U.S. Bank failed to have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage were unpaid; whose properties were within 200 miles of a branch office of the Defendants; who occupied the mortgaged property as their primary

---

[1] As example, Chase, maintained a branch office at 159 Grossman Drive, #444, Braintree, MA 02184 at the time mortgagors were 3 months delinquent, which is within 200 miles of the mortgaged property.

residence; who never clearly indicated to the Defendants that they would not cooperate with such an interview; and who did not enter into a repayment plan, where payments thereunder were current, consistent with the their circumstances to bring the their account current thus making a meeting unnecessary, in breach of the mortgage contract at paragraph 9(d) and in violation of 24 CFR 203.604(b).

32.    The gravity of harm to Plaintiffs and members of the class resulting from the Defendants' breach of mortgage contracts at 9(d) and violations of 24 CFR 203.604(b) outweighs any conceivable reasons, justifications and/or motives of said Defendants for engaging in such unfair acts and practices.

33.    Defendants' conduct was unfair, oppressive, and contrary to public policy and the generally recognized standards applicable to the consumer lending business.

34.    Plaintiffs and members of the class suffered quantifiable damages such as loss of equity in their homes, money spent on funding bankruptcy, legal defense of foreclosure and eviction, and moving and relocation expenses.

35.    Plaintiffs and members of the class have suffered general damages such as loss of property interest, negative impact to credit ratings, loss of their homes, lost opportunities to rectify their situations through loss mitigation and mediation of their mortgage delinquencies, and extreme emotional distress.

36.    Plaintiffs and members of the class claim ownership of their rightful property and seek to clear their titles of all illegal encumbrances, or in the alternative seek actual, exemplary, punitive, and monetary damages.

37.    Plaintiffs' claim on behalf of themselves and all others so similarly situated that the Defendants breach of mortgage contracts at 9(d) and violations of 24 CFR 203.604(b), are the direct cause of the harms alleged herein.

38.    Excluded from the class are governmental entities, the Defendants, their affiliates and subsidiaries, the Defendants current employees and current or former officers, directors, agents, representatives, their family members, the members of this Court and its staff.

39.    Plaintiffs do not know the exact size or identities of the members of the class, since such information is in the exclusive control of Defendants.    Plaintiffs believe that the class encompasses hundreds of individuals whose identities can be readily ascertained from Defendants' books and records.    Therefore, the class is so numerous that joinder of all members is impracticable. (i.e. Numerosity).

40.    All members of the class have been subject to and affected by the same conduct.

41.    The questions of law and fact are common to the class, and predominate over any questions affecting only individual members of the class. (i.e. Commonality).

42.    The claims of the Named Plaintiffs are typical of the claims of the class and do not conflict with the interests of any other members of the class in that the Named Plaintiffs and the other members of the class were subject to the same conduct. (i.e. Typicality).

43.    The Named Plaintiffs will fairly and adequately represent the interests of the class as a whole.    The Named Plaintiffs are committed to the vigorous prosecution of the class claims and has retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, wrongful foreclosure actions. (i.e. Adequacy).

9

44.    A Class Action is superior to other methods for the fast and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

54.    The Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

55.    The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

56.    It is not in the best interest of members of the class to individually control the prosecution or defense of separate actions.

57.    The specific extent and nature of any litigation concerning the controversy already commenced by or against members of the class is minimal.

58.    It is desirable to concentrate the litigation of the claims in this particular forum.

13.    There are little to no difficulties likely to be encountered in the management of a classification.

## COUNT I
### BREACH OF CONTRACT AND BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

13.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

14.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the class described above.

15.    As described above, the mortgage contracts entered into by Plaintiffs and members of the class constitute valid offers.

16.    Upon Plaintiffs and members of the class executing the mortgage contracts and giving them to their Lenders, those Lender's accepted those offers.

17.    Alternatively, Plaintiffs and members of the class' execution of those mortgage contracts thereby giving a security interest in their properties to their Lenders constitutes an offer. Acceptance of that offer occurred when Defendants accepted payments made by Plaintiffs and members of the class pursuant to the mortgage contract.

18.    The mortgage contracts were supported by consideration.  Plaintiffs and members of the class' payments to the Defendants constitutes consideration.

19.    Plaintiffs, members of the class and Defendants thereby formed valid contracts and Plaintiffs and members of the class were, are, and remain ready, willing and, able to perform under the contracts.

20.    Defendants breached the mortgage contracts of Plaintiffs and members of the class by refusing to honor the terms of the mortgage contracts as stated at paragraph 9(d) which states in pertinent part;

> 9(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full, and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

It is a regulation of the Secretary codified in 24 CFR 203.604(b) that:

> (b) The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid...  (See: 24 CFR .604(b)).

The Defendants failed to have face to face meetings with Plaintiffs and members of the class before three full monthly installments due on the mortgages were unpaid. Further, the

Defendants failed to make reasonable efforts to arrange such meetings with Plaintiffs and members of the class.

21.    Plaintiffs and members of the class have suffered harm and are threatened with additional harm from Defendants breach, including but not limited to loss of property interest, higher principle balance, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.

22.    The Defendants are obligated by contract and common law to act in good faith and to deal fairly with the Plaintiffs so as to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance.

23.    Upon good information and belief Defendants routinely and regularly acts in bad faith and breaches this duty for its own economic benefit, preventing contractual objectives from being achieved, by:

   a.   Failing to perform loan servicing functions consistent with its responsibilities to Plaintiffs and members of the class;

   b.   Failing to properly train and supervise its agents and employees, including without limitation, its loss mitigation and collection personnel, foreclosure personnel;

   c.   Failing to follow through on written and implied promises;

   d.   Failing to follow through on contractual obligations; and

e. As a result of these failures to act in good faith and the absence of fair dealing, the Defendants' caused Plaintiffs harm, as alleged above. The Defendants' bad faith was thus to Plaintiffs detriment.

24.   As a result of the Defendants conduct, Plaintiffs and members of the class suffered ascertainable damages and ascertainable losses including:

   a.   wrongful foreclosure;

   b.   otherwise avoidable potential loss of home to foreclosure;

   c.   increased fees and other costs to avoid or attempt to avoid foreclosure;

   d.   loss of savings in fruitless attempts to secure loan modification;

   e.   loss of opportunities to pursue other refinancing or loss mitigation strategies;

   f.   significant stress and emotional distress;

   g.   accrued interest and increased principal balances; and

   h.   less favorable potential modification terms.

72.   Plaintiffs and members of the class are entitled to an equitable rescission of and or injunction of their foreclosures, actual, statutory and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

## COUNT II
## BREACH OF DUTY OF GOOD FAITH AND REASONABLE DILIGENCE

73.   Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

74.   Plaintiffs bring this claim on his own behalf and on behalf of each member of the class described above.

75.    As the entity responsible for servicing Plaintiffs and class members mortgage loans, Defendants owed the Plaintiffs and class members a duty of good faith and fair dealing.

76.    By breaching the terms of the mortgage contracts of Plaintiffs and members of the class as stated in paragraph 9(d) by proceeding and completing foreclosures when those actions were not permitted by regulations of the Secretary of the Department of Housing and Urban Development as codified in 24 CFR 203.604(b), Chase, Rushmore and US Bank violated this duty.

77.    The Plaintiffs and members of the class were damaged by these breaches of duty including without limitation, loss of equity, lost opportunities to work-out their mortgage delinquency, and by imposition of inappropriate foreclosure fees and costs on their accounts.

78.    Plaintiffs and members of the class suffered severe and extreme emotional and mental distress as the direct result of the Defendants actions.

79.    The Plaintiffs and members of the class are entitled to a declaratory judgment determining that the foreclosures and mortgagee's foreclosure sales of their properties are void.

80.    The Plaintiffs and members of the class are entitled to an injunction preventing the transfer of the right, title, and interest in their properties.

81.    The Plaintiffs and members of the class are entitled to cancellation costs and fees assessed to them for wrongful foreclosure, together with additional damages.

82.    Plaintiffs and members of the class are entitled to a Court Order requiring that Defendants take all necessary steps to restore legal title to their properties as if no foreclosure sale had ever occurred.   In addition, Plaintiffs are entitled to be returned to their status and circumstances prior to the wrongful foreclosure sales.

83.    Plaintiffs and members of the class are entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by state law.

Dated: April 14, 2018

Respectfully Submitted,
Plaintiffs, on Behalf of Themselves
And All Others So Similarly Situated,
Through Their Attorney,

/s/ Todd S. Dion
Todd S. Dion Esq. (#6852)
15 Cottage Avenue, Ste 202
Quincy, MA 02169
401-965-4131 Phone
401-270-2202 Fax
toddsdion@msn.com

**VERIFICATION OF COMPLAINT**

I, Dhimiter S. Llordi, Plaintiff in the above-captioned action, hereby depose and state that I have read and subscribed to the foregoing complaint, and the facts set forth therein are based on my own personal knowledge and are true and correct.

Signed under the penalties of perjury on April 14, 2018.

Date:                                                                    Respectfully submitted,
                                                                         Dhimiter S. Llordi.

**VERIFICATION OF COMPLAINT**

I, Natalia Hoshovsky, Plaintiff in the above-captioned action, hereby depose and state that I have read and subscribed to the foregoing complaint, and the facts set forth therein are based on my own personal knowledge and are true and correct.

Signed under the penalties of perjury on April 14, 2018.

Date:                                                                    Respectfully submitted,
                                                                         Natalia Hoshovsky.

I ATTEST THAT THIS DOCUMENT IS A
CERTIFIED PHOTOCOPY OF AN ORIGINAL
ON FILE
                    Deputy Assistant Clerk

16